UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

Eastern District of Kentucky
FILED
MAR 03 2014
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

CRIMINAL ACTION NO. 5: 14CR14

UNITED STATES OF AMERICA     PLAINTIFF

V.     **PLEA AGREEMENT**

DAVID LEWIS     DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the Defendant will enter a guilty plea to the sole count of the Information, charging a violation of 18 U.S.C. § 1832(a)(5), conspiracy to commit theft of trade secrets. The Defendant will further agree to the money judgment forfeiture contained in the Information.

2. The essential elements are:

   for conspiracy generally,

   (1) that two or more persons entered into the unlawful agreement charged in the indictment;

   (2) that the defendant knowingly and willfully became a member of the conspiracy;

   (3) that one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the indictment; and

   (4) that the overt act(s) found to have been committed was (were) committed to further some objective of the conspiracy.

And, for theft of trade secrets,

(1) that the defendant knowingly transmitted, delivered, sent, mailed, communicated or conveyed, without authorization, information from the owner, as alleged in the information;

(2) that the information was a "trade secret," as defined below;

(3) that the defendant knew the information was proprietary;

(4) that the information was related to or included in a product placed in or produced for interstate or foreign commerce; and

(5) that the defendant acted with the intent to convert the information to the economic benefit of himself or another, knowing or intending that this would injure the owner of the information.

A trade secret may include all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing. For such information to be a trade secret, the Government must prove the following elements beyond a reasonable doubt:

(1) The owner of the information took reasonable measures to keep it secret. The Government need not prove that the owner took all conceivable measures to protect the information's secrecy or that the measures the owner took were perfect, but it must prove the measures were reasonable under the circumstances;

(2) The information was not generally known or readily ascertainable through proper means by the public. Information is readily ascertainable if it can be readily duplicated without involving considerable time, effort or expense; and

(3) The information derived independent economic value, whether actual or potential, from not being generally known or readily ascertainable through proper means by the public. It is not necessary for the Government to prove an exact dollar amount attributable to the secrecy of the information, just that the owner derived some economic value from its secrecy.

3. As to the charges, the United States could prove the following facts that

establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

The Defendant was employed by Brake Parts International, Inc. ("BPI") as a Principal Development Engineer from 1998 through 2008. The Defendant was assigned to develop ceramic brake pads. In March 9, 1999, the Defendant signed an "Invention and Disclosure Agreement" ("IDA") with BPI in which he agreed not to disclose, and to treat as "trade secrets," any of BPI's confidential or proprietary information. The Defendant was assigned to BPI's research and development facility in Winchester, Kentucky, in the Eastern District of Kentucky.

In September 2006, while the Defendant was still employed by BPI in Winchester, and without the company's knowledge, the Defendant began corresponding with Robert Kahan ("Kahan"), executive vice president of Satisfied Brake Products, Inc. ("Satisfied"), a BPI competitor headquartered in Ontario, Canada, and agreed to become a paid consultant to Satisfied regarding the development of ceramic brake pads. The Defendant told Kahan he was unhappy with his current employment with BPI and that he no longer felt valued by his supervisors at BPI. On October 26, 2006, the Defendant traveled to Cincinnati, where at an airport motel Kahan gave the Defendant $8,000 in $100 bills for the Defendant's service as a consultant to Satisfied. Lewis requested Kahan pay him via wire transfer, however it was Kahan's idea to meet him in person to pay him in cash. This was the only time Lewis was ever paid in cash in his line of work. Subsequent to becoming employed with Satisfied, Lewis was paid by check.

From September 2006 through January 2008, when the Defendant was terminated by BPI, the Defendant and Kahan corresponded using the e-mail accounts brakestop06@yahoo.com and robertcanadas@gmail.com, respectively, in order to conceal their communication from BPI. It was Kahan's idea to use these specific e-mail accounts and this was to conceal their communications. The Defendant e-mailed Kahan proprietary information owned by BPI on numerous occasions in 2006 and 2007 at the request of Kahan. In February 2008, the Defendant began working openly for Satisfied as a consultant and continued there until June 2009.

During the period from September 2006 through November of 2007, while the Defendant was employed by Satisfied, first secretly and later openly, the Defendant e-mailed to Kahan BPI's trade secrets, including BPI brake pad formulas and a BPI underlayer formula. When the Defendant's employment was terminated with BPI, he took formulas and other protected information with him to Satisfied and shared this information with Kahan to economically benefit Satisfied. When the Defendant sent these formulas to Kahan both while employed by BPI and after his employment was terminated by BPI, the Defendant knew they belonged to BPI and that a confidentiality agreement was in place to protect the formulas. Although the Defendant helped to develop the above formulas, he was aware BPI owned the formulas, and despite this, he agreed to e-mail Kahan the above formulas knowing this information would benefit Satisfied financially and knowing the Defendant's actions would injure BPI financially.

4. The statutory punishment is not more than 10 years imprisonment, a fine of

not more than $250,000, or both, and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. The United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to other calculations. This recommendation does not bind the Court. The United States, at the time of the preparation of this agreement, believes these recommended guidelines to be the full and complete guidelines applicable to the case. If, however, the United States Probation Office, in its preparation of the Presentence Investigation Report, arrives at a computation of guidelines that is different in any way from the recommended guidelines that follow herein, the United States and the Defendant reserve the right to object to, remain neutral on, or agree with any and all of those guideline computations that are different.

> (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2008, manual will determine the Defendant's guideline range.
>
> (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct is set forth above.
>
> (c) Pursuant to U.S.S.G. § 2B1.1(a)(2), the base offense level is a 6.
>
> (d) Pursuant to U.S.S.G. § 2B1.1(b)(1)(F), the fraud amount was more than $120,000, resulting in a 10-level enhancement.
>
> (e) Pursuant to U.S.S.G. § 2B1.1(b)(9)(B), a substantial part of the fraudulent scheme was committed from outside the United States, resulting in a 2-level enhancement.
>
> (f) Pursuant to U.S.S.G. § 3E1.1, and unless the Defendant commits another crime, obstructs justice, or violates a court order decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the

United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K. The United States has no objection to the Defendant remaining on release pending sentencing in this matter unless the Defendant violates any of his release conditions.

8. The Defendant waives the right to appeal the guilty plea, conviction and sentence including any order of restitution. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. After pleading guilty, the Defendant will make a full and complete financial disclosure to the United States and will assist the United States in the gathering of all financial information. The Defendant will complete and sign a financial disclosure statement or affidavit, will sign financial releases prepared by the United States, and will submit to a deposition in aid of collection at times and places that the United States directs. Any unpaid penalty will be submitted to the United States Treasury for offset. . If the Defendant fails to comply with any of the provisions of this paragraph, the United States may in its discretion argue to the Court that the Defendant should not receive a two

level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).

10. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

11. The Defendant agrees to the money judgment forfeiture listed in the forfeiture allegation of the Information and will execute any document necessary to facilitate the money judgment forfeiture. The amount of the money judgment forfeiture will be left open for final determination at the time of sentencing.

12. This document and the plea supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

13. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

14. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

KERRY B. HARVEY
UNITED STATES ATTORNEY

Date: 3\3\14       By: _____
                        Hydee R. Hawkins
                        Assistant United States Attorney

Date: 3/3/14       *David Lewis* (signature)
                   David Lewis
                   Defendant

Date: 3/3/14       *Pam Ledgewood* (signature)
                   Pam Ledgewood
                   Attorney for Defendant

**APPROVED**, this 3d day of March, 2014.

*Joseph M. Hood* (signature)
UNITED STATES DISTRICT COURT JUDGE